UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

JOSHUA E. DUNLAP,                        :
                                         :
      Plaintiff                          :
                                         :
  v.                                     : CIVIL NO. 3:CV-14-1478
                                         :
RICHARD SMITH, et al.,                   : (Judge Kosik)
                                         :
      Defendants                         :

**MEMORANDUM**

Plaintiff, Joshua E. Dunlap, filed this civil rights action pursuant to 42 U.S.C. § 1983 while confined at the Centre County Prison, Bellefonte, Pennsylvania.[1]  In the complaint, Plaintiff appears to allege that Defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment.  Pending are Plaintiff's motions to supplement the complaint (Doc. 16), for entry of default (Docs. 18, 24) and to decide the necessity of filing a certificate of merit and for the appointment of counsel (Doc. 32).  Also pending are Defendants' motions to dismiss the complaint (Docs. 25, 28).

**I.     Background**

Named as Defendants are the following Centre County Prison employees:

---

[1] It is unclear as to whether he was a pre-trial detainee or convicted of a crime at the time.  He has since been released from prison.

Richard Smith, Warden; Tom Toolan and David Goodman, Licensed Practical Nurses; Holly Baney, Physician's Assistant; and Larry Lidgett, Registered Nurse. Plaintiff alleges that in early April of 2014, he was diagnosed by the doctor at the Centre County Prison with a reoccurrence of basal cell carcinoma on his scalp. The doctor ordered that a biopsy be performed followed by removal outside of the prison. (Doc. 1 at 2.)

On July 4, 2014, Defendant Baney attempted to "surgically remove the basal cell cancer" at the prison with no one else present except Defendant Goodman. Baney administered numerous shots to numb the affected area. During the surgery, Plaintiff experienced severe pain. At one point, Baney asked Plaintiff if he would prefer that the procedure be stopped so that he could ". . . go to a place that can properly numb [him]." (Id.) Because Plaintiff had already been subjected to so much pain, had a large open incision and was worried about infection, he permitted Baney to finish.

Ten days after the procedure, Plaintiff was informed that his stitches needed to be removed. Defendant Goodman removed the stitches in "a painful long tedious procedure." (Id. at 3.) Goodman was asked whether the removed tissue had been sent away to be analyzed. He informed Plaintiff that the report on the tissue came back showing that the edges were not clear and that Defendant Baney had not gone deep enough. He was further advised that he would need to see an outside

2

professional.

In response to the foregoing, Plaintiff sent requests to Defendant Smith, the Deputy Warden, and Defendant Toolan raising concerns as to what now would be done and whether Baney and Goodman were qualified and authorized to conduct the procedures they performed at the prison in defiance of the prison doctor's orders. Plaintiff claims that Defendants Toolan and Lidgett arranged the surgery and talked to him directly.  Plaintiff claims that Warden Smith oversees daily operations at the prison and was aware of the procedures.  As relief, he seeks monetary damages, including the payment for any future procedures necessary such as plastic surgery to cover up the scarring from the unsuccessful procedure performed by Defendants.

Service of the complaint was directed on July 31, 2014.  Two supplements thereto have been accepted by the court that set forth related incidents occurring since the filing of this action. (Docs. 12, 14.)   In the supplements, Plaintiff states that he met with the prison doctor on August 6, 2014, and was informed that an appointment with an outside dermatologist was being scheduled to have the cancer removed.  The doctor confirmed that Baney was only supposed to perform a biopsy, and not attempt to perform surgery to remove the cancer.  (Doc. 12.)  On August 12, 2014, Plaintiff was taken to a dermatology specialist in State College, Pennsylvania for removal of the basal cell cancer.  He claims that he experienced no pain and was provided antibiotic cream and instructions to have the bandage changed every day for 6 weeks.

3

He further alleges that Defendant Toolan misrepresented to him that Defendant Baney specialized in dermatology. (Doc. 14.)

Plaintiff has since filed another motion to supplement the complaint with additional information (Doc. 16), and a supplement to the complaint (Doc. 19). He has also filed two motions seeking the entry of default due to Defendants' alleged failure to respond to the complaint (Docs. 18, 24) and a motion to compel service and answer to his complaint (Doc. 23).

Also pending are motions to dismiss the complaint filed by Defendants Goodman, Baney, Lidgett and Toolan (Doc. 25) and Defendant Smith (Doc. 28). Plaintiff has filed opposition to both motions. He has also filed a document entitled "Motion to Decide Certificate of Merit Applicability to Plaintiff's Complaint/ Extension of Time for Certificate if Needed/Appointment of Counsel." (Doc. 32.)

**II.    Discussion**

**A.    Supplements to the complaint**

In Documents 16 and 19, Plaintiff sets forth further information related to the allegations set forth in his complaint and occurring since the filing of the complaint and earlier supplements thereto. For instance, he claims that Defendants have failed to provide him with the aftercare ordered by the dermatologist following his surgery on August 12, 2014. As such, the supplements submitted (Docs. 16, 19) will be accepted by the court.

4

### B.     Motions for default/to compel answer to complaint

Service of the complaint was directed on July 31, 2014. (Doc. 7.) Service was returned executed on Defendants, as evidenced by certified mail return receipt green cards dated September 17, 2014, and filed with the court on September 25, 2014. (Doc. 21.) As such, responses to the complaint were due on or before October 8, 2014. Timely motions to dismiss the complaint were thereafter submitted. As such, the pending motions for default and to compel an answer to the complaint will be denied.

### C.     Motion to Decide Certificate of Merit Applicability/ Motion for Counsel

A previous motion for the appointment of counsel filed by Plaintiff was denied on August 11, 2014. Plaintiff again requests counsel on the basis that he is not aware of all the rules of civil procedure and is at a disadvantage in litigating against counsel for Defendants. (Doc. 32.) He specifically seeks the appointment of counsel if a certificate of merit ("COM") is required in this case, however he does not know why a COM would be necessary since he is claiming deliberate indifference in violation of the Eighth Amendment.

For the reasons set forth in the court's order of August 11, 2014, any pending request for the appointment of counsel will be denied. Plaintiff's filings to date demonstrate that he is literate and able to prosecute this case on his own. Also, he is no longer confined in prison, and therefore is not as limited in litigating this action.

Also, because a COM is not required in this case, this does not serve as a basis for seeking the appointment of counsel. Pennsylvania requires a plaintiff to file a certificate of merit ("COM") within 60 days after filing a complaint asserting a claim for professional negligence. See Pa. R. Civ. P. 1042.3(a); see also Liggon-Redding v. Estate of Sugarman, 659 F.3d 258, 260 (3d Cir. 2011). The requirements of Rule 1042.3(a) are substantive in nature, and apply to state law medical negligence claims filed in federal court. Liggon-Redding, 65 F.3d at 260. Therefore, to maintain a medical malpractice claim against Defendants, Plaintiff must have filed a COM within 60 days of the filing of his original complaint. See Booker v. U.S., 366 F. App'x 425 (3d Cir. 2010)(nonprecedential). However, in the instant case, Plaintiff states that he is not bringing a state law medical negligence claim. Rather, he is strictly pursuing his claims under the Eighth Amendment for deliberate indifference to his medical needs. For this reason, no COM is required and provides no justification for seeking the appointment of counsel in this case.

**D.    Motions to Dismiss**

Standard

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff

6

may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)(quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)(quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, and a court "'is not bound to accept as true a legal conclusion couched as a factual allegation....'" Twombly, 550 U.S. at 555 (quoted case omitted).

In resolving a motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 211 (quoted case omitted).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic

document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also, U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002)(holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") However, the court may not rely on other parts of the record in determining a motion to dismiss. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Two motions to dismiss are presently pending before the court. The first motion is filed on behalf of Medical Defendants Baney, Toolan, Lidgett and Goodman. (Doc. 25). The second motion is filed on behalf of Warden Smith. (Doc. 28.)

Two elements must be present in order to state a § 1983 claim: (1) the conduct complained of must have deprived the plaintiff of rights, privileges and immunities secured by the Constitution or laws of the United States; and (2) the conduct must

8

have been committed by a person acting under color of state law.  See Lugar v. Edmondson Oil Co., 457 U.S. 922, 923 (1982); Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993).  Plaintiff must demonstrate that each Defendant was personally involved in the alleged wrongful actions either by actual conduct, or knowledge of and acquiescence in the wrongful actions.  Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988).  Defendants in "a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior."  Rode, 845 F.2d at 1207.  Thus, a mere linkage in the prison chain of command is not sufficient to demonstrate personal involvement.

A constitutional violation under the Eighth Amendment in the medical context occurs only when state officials are deliberately indifferent to an inmate's serious medical needs.  Estelle v. Gamble, 429 U.S. 97, 105 (1976).  To establish a violation of his constitutional right to adequate medical care in accordance with this standard, Plaintiff is required to allege facts that demonstrate (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need.  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104.  Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for

9

treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that mere misdiagnosis of a condition or negligent treatment provided for a condition, is not actionable under the Eighth Amendment because medical malpractice standing alone is not a constitutional violation. Estelle, 429 U.S. at 106. Deliberate indifference is generally not found when some significant level of medical care has been offered to an inmate, see Gindraw v. Dendler, 967 F. Supp. 833, 836 (E.D. Pa. 1997), or where claims are based upon the level of professional care that an inmate has received, see Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008). Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. See Gause v. Diguglielmo, 339 F. App'x 132 (3d Cir. 2009); Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979).

Prison officials, who are not physicians, cannot be considered deliberately indifferent simply because they failed to respond to the medical complaints of a prisoner who was already being treated by medical personnel of the prison. Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). Further, participation in the after-the-fact review of a grievance is not enough to establish personal involvement. See Rode, 845 F.2d at 1208 (finding the filing of a grievance is not enough to show the

10

actual knowledge necessary for personal involvement).

In the instant case, the court will grant Defendant Smith's motion to dismiss. Plaintiff fails to demonstrate any personal involvement on behalf of Smith other than to allege that as the warden, he oversees the daily operations of the prison. The only other allegation against Smith is that Plaintiff sent a request to him following the incident with Baney asking what would be done now and whether Baney and Goodman were qualified to conduct the procedures in violation of doctor's orders. Because the claims raised against Smith are premised upon the principle of respondeat superior, they will be dismissed.  Moreover, any failure of Smith to respond to Plaintiff's request would fail to state a cause of action under Durmer in that Plaintiff was under the treatment of prison medical personnel.

The Medical Defendants seek dismissal of the complaint on the basis that Plaintiff merely seeks to set forth claims of negligence and disagreement with medical treatment.  For purposes of the motion, they concede that Plaintiff's medical condition was serious.  Without unnecessary elaboration, at this juncture, the court will deny the Medical Defendants' motion.  Plaintiff alleges more than that Defendant Baney merely failed to properly perform a procedure.  Rather, he alleges that Baney and Goodman performed procedures that they were not authorized to do, in defiance of a doctor's orders, and that they caused Plaintiff unnecessary pain and suffering. He further maintains that the Medical Defendants failed to provide required aftercare

11

following his visit to the outside specialist.  Without passing judgment on the ultimate merits of Plaintiff's claims, they will be allowed to proceed.  The Medical Defendants will be directed to file an answer to the complaint and supplements thereto within twenty (20) days.

     An appropriate order follows.